IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARL A. COURTRIGHT, III,

Petitioner,

v.

Civil Case No. 12-cv-1078-DRH
Criminal Case No. 07-cr-30179-DRH

UNITED STATES OF AMERICA,

Respondent.

### MEMORANDUM & ORDER

HERNDON, Chief Judge:

## I.      Introduction

Now before this Court is petitioner Carl A. Courtright's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).  The government opposes Courtright's motion (Doc. 14). For the following reasons, Courtright's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**.[1]

## II.      Procedural and Factual History

On November 15, 2007, an indictment was returned charging Courtright with production and possession of child pornography (Cr. Doc. 1). On November 29, 2013, Assistant Federal Public Defender Judith Kuenneke entered an

---

[1] Having closely examined the record before it, the Court concludes Courtright's claims do not warrant an evidentiary hearing. *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion; *see also* Rules 4(b) and 8(a) of Rules Governing Section 2255 Proceedings.

appearance on Courtright's behalf (Cr. Doc. 11). On March 24, 2008, Courtright moved *pro se* for new counsel, citing his belief that Kuenneke was not working diligently on his behalf (Cr. Doc. 22). District Judge Gilbert granted Courtright's request for new counsel and his previous request for a continuance (Cr. Doc. 24). Courtright's second trial attorney, CJA panel attorney Timothy Capps, moved to withdraw on September 9, 2008, citing a newly-arisen conflict (Cr. Doc. 28). Thereafter, Judge Gilbert appointed a second CJA panel attorney, Jeffrey Rosanswank, to represent Courtright (Cr. Doc. 33). Rosanswank represented Courtright throughout the remainder of the trial court proceedings.

A superseding indictment was returned against Courtright on September 17, 2008, additionally charging receipt of child pornography and bank fraud (Cr. Doc. 30). Following Courtright's arraignment on the superseding indictment (Cr. Doc. 36), Judge Gilbert granted Courtright's motion to continue trial and the government's oral motion to conduct Courtright's trial in East St. Louis. As the trial was to be conducted in East St. Louis, Courtright's case was reassigned to the undersigned to preside over the remainder of the trial court proceedings (Cr. Doc. 42).

On December 9, 2008, the Court granted Courtright an additional extension of time to file pretrial motions, requiring the filing of said motions by December 15, 2008 (Cr. Doc. 52). Courtright timely moved to suppress statements taken on August 9, 2007 (Cr. Doc. 53, Amended at Cr. Doc. 55), statements taken on August 30, 2007 (Cr. Doc. 56), and evidence seized from "Barn" on August 30,

2007 (Cr. Doc. 56). Courtright filed an additional untimely motion to suppress evidence obtained from a MySpace administrative subpoena, without leave of the Court, on February 6, 2009 (Cr. Doc. 60). The Court granted the government's request to strike the untimely motion (Cr. Doc. 64).

Following a hearing, the Court denied Courtright's motions to suppress (Cr. Doc. 71). A second superseding indictment was returned, adding a second possession of child pornography charge, on February 18, 2009 (Cr. Doc. 67). On February 24, 2009, the Court denied Courtright's motion to reopen pretrial motions and continue trial (Cr. Doc. 78).

The case proceeded to trial on March 2, 2009. At trial, the government presented the following:

In May 2007, as part of a computer crime task force, the Illinois Attorney General's Office served a subpoena on the social networking website MySpace regarding registered sex offenders in Illinois, based on information it had received of possible crimes in the Granite City, Illinois area (Cr. Doc. 126, Tr. Day 2, at pp. 7-8). Agents used the Myspace.com records to learn that in December 2006, the IP address registered to Courtright, a registered sex offender, had offered child pornography for distribution on the internet through a file sharing program called Limewire (*Id.* at pp. 9-13). Thereafter, a search warrant was obtained for Courtright's residence where he lived with his parents (*Id.* at pp. 13-15). Execution of the search warrant resulted in the obtainment of multiple computers and computer equipment located throughout the home (*Id.* at pp. 14-18). A

forensic preview determined that a laptop found in Courtright's bedroom contained child pornography that had been downloaded through Limewire (*Id.* at pp. 14-18, 42). Evidence of bank fraud was also revealed (*Id.* at pp. 14-17). During a brief interview at Courtright's residence, Courtright said he was the only user of the laptop found in his bedroom and the only Limewire user (*Id.* at p. 42). Courtright later denied he was the sole user of the laptop or Limewire (*Id.* at pp. 42-43).

In-depth forensic analysis revealed Courtright possessed an extensive collection of child pornography (Cr. Doc. 128, Tr. Day 4, at pp. 33-144). The images were found either on a computer password-protected for Courtright's sole access, or on the laptop to which Courtright conceded he was the sole user. The government's computer forensics expert offered evidence as to the contents of the hard drives, including the co-mingling of Courtright's personal identifiers with evidence of child pornography and bank fraud (*Id.*).

While the majority of the images were downloaded off the internet, a series of images of a young girl was transferred directly from a Hewlett Packard (HP) camera. The young girl was later identified as S.J., a 14 year old living with her father (a former cellmate of Courtright's) in the garage of a home Courtright's parents owned at the time the images were made (Cr. Doc. 127, Tr. Day 3, at p. 74).

S.J. testified that Courtright convinced her to let him take a series of naked pictures of herself in exchange for $500.00. At the time, S.J.'s father was heavily

abusing drugs, S.J. had no money for food, no ability to take a shower, and the water she had to drink made her sick (*Id.* at p. 85). Courtright took the pictures himself (*Id.* at p. 89). Courtright instructed S.J. to make the pictures seem like "a tease" with S.J. undressing in various stages. At one point, Courtright told S.J. to "spit" in her hand and "play with herself" to make her seem "aroused" in the pictures (*Id.* at pp. 88-91). S.J. testified that a week after taking the pictures, Courtright came to S.J. and told her he had accidentally deleted all the photos. He asked S.J. to retake all the photos, without payment, once her sores healed from the infection she received from a lack of clean water (*Id.* at pp. 95-96).

As to Courtright's charge for bank fraud, Courtright was ordained on-line as a minister. Courtright created "Truth of God Ministries." Courtright deposited numerous fake donation checks into the online ministry's account (Doc. 127, Tr. Day 3, at pp. 226-end; Doc. 128, Tr. Day 4, at pp. 1-23). Courtright presented no witnesses.

Near the end of the first day of jury deliberations, the Court was made aware that certain properly-admitted exhibits were inadvertently left in the government's possession and thus not provided to the jury. After discussing the issue with the government and defense counsel (defendant was not in attendance), the Court decided to provide the evidence to the jury, explain that they were inadvertently not provided at the beginning of deliberations, while informing the jury it was time to wrap up deliberations for the day (Cr. Doc. 129, Tr. Day 5, at

pp. 34-37). The following Monday morning, the Court explained its reasoning to Courtright (Cr. Doc. 155, Tr. Day 6, at pp. 3-14).

On March 9, 2009, Courtright was convicted of each of the charges in the second superseding indictment (*Id.* at pp. 16-20). On July 17, 2009, the Court sentenced Courtright to life plus 120 months consecutive on Count 1, 240 months on Counts 2 and 3, 480 months on Count 4, and 360 months on Count 5, all such terms to run concurrently, for a total of life imprisonment, plus 120 months consecutively (Cr. Doc. 115).

On July 23, 2009, Courtright filed a notice of appeal (Cr. Doc. 117). Gareth Morris was appointed to represent Courtright on direct appeal. Courtright claimed that evidence of a prior sexual assault was erroneously admitted at trial and that certain jury instructions were improper. On January 13, 2011, the Seventh Circuit affirmed Courtright's conviction, finding any error was harmless in light of the "abundant evidence" of Courtright's guilt. *United States v. Courtright,* 632 F.3d 363, 372 (7th Cir. 2011). The Supreme Court denied Courtright's petition for writ of certiorari on October 3, 2011. 132 S. Ct. 296. Thus, Courtright's limitation period for filing a timely Section 2255 motion ended on October 3, 2012. *See* 28 U.S.C. § 2255(f)(1); *Latham v. United States,* 527 F.3d 651, 652 (7th Cir. 2008) (citing *Clay v. United States,* 537 U.S. 522, 525 (2003)).

Courtright's initial petition under Section 2255 is dated September 28, 2012. Thus, Courtright's initial petition is considered filed on that date. *See*

*Houston v. Lack*, 487 U.S. 266, 271 (1988) (a *pro se* prisoner litigant's notice of appeal is deemed to have been filed when placed in the hands of prisoner officials for mailing); *Jones v. Bertrand,* 171 F.3d 499 (7th Cir. 1999) (holding that *Houston* "mailbox rule" applies to prisoners filing *pro se* habeas petitions).

The Court shall now address Courtright's various claims in turn.

### III.   Courtright's Section 2255 Petition is Denied

#### a. Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to Section 2255 is not a substitute for a direct appeal. *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007).

Thus, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided on direct appeal. *Olmstead v. United*

*States,* 55 F.3d 316, 319 (7th Cir. 1995).   Further, a petitioner cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States,* 523 U.S. 614, 622 (1998); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Moreover, a Section 2255 motion cannot pursue nonconstitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States,* 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

Courtright raises various claims of ineffective assistance of counsel. Importantly, the Supreme Court has held that the usual procedural default rule does not generally apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the

proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the second prong, a petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Id.* at 696. A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, a petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

## b. Application

### I.    Claims 1-5

### Claim 1: Rosanswank Failed to Timely Challenge the Administrative Subpoena.

Courtright generally alleges that he and attorney Capps had developed a "strategy" that involved challenging the administrative subpoena. Courtright complains that Rosanswank failed to adequately pursue this line of defense as the Court struck Courtright's motion challenging the administrative subpoena as untimely. Notably, Courtright did not appeal this Court's decision to strike the motion as untimely.

As to Courtright's claim of ineffective assistance of counsel arising from Rosanswank's failure to timely move to suppress evidence, Courtright must prove "'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Courtright's grievance, as stated in his initial petition, focuses on the untimely nature of Rosanswank's filing of Courtright's motion, instead of its alleged merit. In moving to strike the subject motion in Courtright's criminal case, the government briefly explained why, in its opinion, the motion was frivolous:

> First the administrative subpoena was served within the scope [of] the power of the Illinois Attorney General's Office. Second, even if the subpoena were improperly issued, defendant acknowledges that he had no right to privacy in the result of the subpoena - the IP address. Third, even if the defendant had a right to privacy such that he had standing to make a challenge to the subpoena, the Government had sufficient probable cause to get the resulting search warrant even without the Myspace subpoena because the ICAC database had logged the defendant's IP address as offering child pornography for download months prior to the search warrant.
>
> Lastly, and most importantly, the defendant makes no showing of how, even if the entire subpoena was improper, which it was not, the Granite City police detective acted without good faith when he applied for and acted on a warrant to search the defendant's home.

(Cr. Doc. 62). Courtright does not address these points in arguing the untimely nature of the motion rendered Rosanswank's representation constitutionally

deficient.[2] He has not met his burden in proving Rosanswank provided ineffective assistance of counsel.

### Claim 2: Rosanswank Failed to Present a Defense

Courtright alleges he instructed Rosanswank to hire computer experts to rebut the testimony of the government's experts. Courtright further requested a witness to rebut the testimony of a former cellmate who testified as to statements Courtright made while they were both incarcerated. Courtright's complaints clearly do not demonstrate Rosanswank's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.

As to Courtright's request for expert computer witnesses, in light of the government's expert testimony, it is difficult to imagine that a computer expert would testify in Courtright's desired manner.[3]

Courtright alleges a rebuttal witness would demonstrate that Courtright's former jailhouse acquaintance testified against Courtright in an effort to receive a sentence reduction. However, the record reveals that Courtright's former cellmate admitted on the stand that he hoped to receive a reduction in sentence via a Rule 35 motion. Moreover, Rosanswank expanded upon this possible motive for

---

[2] Courtright attaches to his reply an extensive *pro se* motion to suppress the administrative subpoena that he seemingly feels should have been filed in place of the motion this Court struck as untimely (Doc. 27-7). To the extent this attachment (in addition to the other extensive materials offered in reply) raises new arguments, these additional arguments are not properly before the Court. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) (arguments made for the first time in a reply brief are waived). Regardless, his arguments do not demonstrate that an identical timely motion would have been meritorious.

[3] Courtright's reply attaches an alleged statement of a fellow inmate of Courtright's, Dale Russell, who claims knowledge in computers. Russell's alleged statement, which is not notarized, does not demonstrate that similar testimony would have changed the outcome at trial. The statement merely offers general knowledge as to IP addresses and computer files (Doc. 27-13).

testifying on cross-examination. Courtright further alleges his requested rebuttal witness's undisclosed testimony would have cast doubt on the testimony of Courtright's former cellmate. However, even without Courtright's former cellmate's testimony, the evidence overwhelmingly demonstrates Courtright's guilt.

Contrary to Courtright's assertions, Rosanswank pursued a defense at trial. Rosanswank argued that others had access to the computers and that Courtright was set-up. Courtright's generalized grievances do not sufficiently rebut the "strong presumption" that Rosanswank "rendered adequate representation of his client." *Meyer*, 234 F.3d at 325.

**Claims 3, 4, and 5: Inadvertent Exclusion of Evidence**

To summarize Courtright's claims 3, 4, and 5, he believes that the undersigned's timing and delivery of the four pieces of properly admitted evidence inadvertently kept from the jury for approximately two hours of their deliberations requires that this Court vacate his conviction. He further argues Rosanswank's failure to secure his presence at the on-record hearing in which this matter was discussed requires that the Court vacate his conviction. Courtright is mistaken.

Courtright did not raise any issue concerning this Court's handling of the evidence issue on direct appeal. To that extent, his claims are not properly before the Court.

Regardless, they are meritless. "[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." *United States v. Bishawi,* 272 F.3d 458, 461 (7th Cir. 2001) (quoting *Rushen v. Spain*, 464 U.S. 114, 119 (1983) (Stevens, J., concurring in judgment)).

Moreover, "the constitutional right to presence, which derives from the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment, exists where there is a reasonably substantial relation to the fullness of opportunity to defend against the charge and to the extent that a fair and just hearing would be thwarted by the defendant's absence." *Id.* at 461-62 (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (additional citation omitted)).

As to the broader procedural right to a defendant's presence UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 43, presence of the defendant is not required when the proceeding involves only a conference or hearing upon a question of law. *Id.* at 462 (citing Fed. R. Cr. P. 43(c)(3)). Further, a court shall consider the exclusion of a defendant from a trial proceeding in light of the entire record. *Id.* (citing *United States v. Moore*, 936 F.2d 1508, 1523 (7th Cir. 1991)).

Violations of either a defendant's constitutional or procedural right to presence are subject to the harmless error standard. *Id.* (citing *Rushen,* 464 U.S.

at 118-10); *see also United States v. Silverstein,* 732 F.2d 1338, 1348 (7th Cir. 1984). An error is harmless unless it affects "substantial rights," Fed. R. Civ. P. 52(a), meaning the violation likely affected the jury's verdict. *Bishawi,* 272 F.3d at 462 (citing *United States v. Pressley,* 100 F.3d 57, 60 (7th Cir. 1996)).

Assuming Courtright's absence from the hearing was in error, any error was clearly harmless. His instant arguments are those advocated by Rosanswank at the hearing. Rosanswank argued that to avoid drawing undue to attention to the inadvertent exclusion, the jury should conclude for the day without the benefit of the excluded exhibits. The following Monday, the excluded evidence should then be combined with the included evidence without alerting the jury to its initial exclusion.  This is not the course the Court ultimately decided upon, as it compromised between the positions of both sides. The Court explained its reasoning to Courtright at the next available opportunity. Thus, Courtright's absence from the hearing was harmless, as his presence at the hearing would not have swayed the undersigned to take a different approach. *See Silverstein,* 732 F.2d at 1348. As such, Courtright cannot establish prejudice from Rosanswank's failure to secure his presence.

Further, the Court's brief comments to the jury, made with the full knowledge of counsel for both sides, clearly did not affect the outcome of the case. The Court did not discuss the evidence or any issue of magnitude with the jury. The Court simply informed the jury that it was time to begin wrapping up their deliberations for that day, while also mentioning that four pieces of properly

admitted evidence were inadvertently excluded from their deliberations and that they should not attach any significance to the omission.

In light of the entire record, namely the overwhelming evidence of Courtright's guilt, Courtright's absence from the hearing and the Court's brief comments to the jury do not require that the Court vacate his conviction.

## II.    Claims 6-15

The government argues Courtright's claims 6-15, filed in amended petitions, without leave of Court, raise new, untimely claims which the Court should not consider.  As stated above, October 3, 2012, represents Courtright's deadline for the filing of a timely Section 2255 petition. Thus, Courtright's initial petition, containing claims 1 through 5, is timely. Following the timely filing of his initial petition, Courtright filed an amended petition, dated October 15, 2012 (Doc. 6), and a second amended petition, dated November 12, 2012 (Doc. 12). The Court is in agreement with the government that to the extent these "amended petitions" assert "new ground[s] for relief supported by facts that differ in both time and type from those the original pleading set forth," these new claims are untimely and not properly before the Court. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). However, in an abundance of caution, the Court shall address below these untimely claims, solely to the extent they are not addressed above.

## Claim 6: Ineffective Assistance for Failure to Arraign on the Second Superseding Indictment

Courtright raises various issues surrounding the second superseding indictment. Specifically, he argues that he should have been formally arraigned on

the second superseding indictment, Rosanswank was ineffective because Courtright was not arraigned on the second superseding indictment, and Rosanswank was ineffective because the Court would not continue Courtright's trial for a fifth time. Courtright did not raise issues surrounding the second superseding indictment or the Court's denial of a continuance on direct appeal. To that extent, these issues are not properly before this Court.

As to the merits, Courtright was arraigned on both the initial and superseding indictments (Cr. Docs. 10, 36). As the government states, the second superseding indictment did not substantively change the allegations or potential penalties contained in the superseding indictment. In this instance, the failure to arraign on the second superseding indictment did not deprive Courtright of any "substantial right, or in any wise change the course of the trial to his disadvantage." *Garland v. State of Washington,* 232 U.S. 642, 645-46 (1914). Courtright had a jury trial, with a full chance to be heard on the charges in the second superseding indictment. Courtright proceeded to trial as if he had been arraigned on the second superseding indictment and entered a formal plea of not guilty. Thus, because Courtright was given a full and fair opportunity to defend the charges contained in the second superseding indictment and did not object to proceeding to trial without formal arraignment on the second superseding indictment, his conviction will not be set aside on this basis. *See id.* As Courtright cannot establish harm from his failure to be formally arraigned on the second

superseding indictment, Rosanswank was not ineffective for failing to ensure Courtright's arraignment.

Somewhat relatedly, Courtright also alleges he did not have enough time to prepare an adequate defense as the second superseding indictment was handed down approximately two weeks before trial. Rosanswank filed a motion to continue and re-open pretrial motion filing in part on this basis (Cr. Doc. 75). The Court denied the motion stating,

> One thing is clear from the outset, Defendant and his counsel have had ample time to prepare for trial.
>
> .   .   .
>
> While the second superseding indictment adds a new count, it is more of the same regarding possession and the Court takes the government at its word that it adds no new evidence since the dates cover the same periods of time. Without viewing the evidence, it is presumed that the two counts simply separate the evidence in ways not performed by the previous indictment.

(Cr. Doc. 78).

Courtright basically argues Rosanswank was ineffective because the Court refused to continue trial and re-open the filing of pre-trial motions. As the Court stated in its denial of a fifth continuance, if it believed another continuance would *clearly* make a difference in Courtright's ability to mount a defense, the Court would have granted an additional continuance, without question. However, this was not the case. Despite this Court's denial of an additional continuance, Rosanswank was prepared for trial and diligently represented his client. Thus, Courtright has not presented the Court with a reason to vacate his conviction.

**Claim 7: Ineffective Assistance for Failure to Move for a Mistrial**

Courtright argues Rosanswank was ineffective for failing to move for a mistrial. The government correctly characterizes Courtight's claim, as he merely "seize[s] upon various phrases he deems inappropriate and inflammatory from the lengthy trial transcript [and elsewhere] as a basis for alleging prosecutorial misconduct and collusion between prosecution and defense counsel" (Doc. 14, p. 16). Courtright devotes a considerable amount of his argument to the inadvertent evidence exclusion discussed above. For the reasons stated above, Rosanswank was not ineffective for failing to move for a mistrial on this basis. The Court has reviewed the remainder of Courtight's grievances and finds none would have formed the basis of a meritorious mistrial argument. Rosanswank's failure to file frivolous motions certainly does not amount to ineffective assistance of counsel. *United States v. Rezin,* 322 F.3d 443, 447 (7th Cir. 2003) ("A defendant's lawyer has, it is certainly true, no duty to make a *frivolous* argument; and there is a tactical reason not to make weak arguments.").

**Claim 8: Ineffective Assistance for Failing to Object to Court's Constructive Amendment to Indictment[4]**

Courtright argues Rosanswank was ineffective for failing to object to this Court's instruction to the jury that it could convict Courtright on the charged crimes in Counts 2, 3, and 4 of the second superseding indictment of images "not limited to files and file paths named in the second superseding indictment."

---

[4] The Court notes that Courtright seemingly withdraws this claim in his reply (Doc. 27-1, at p. 12). Regardless, the Court shall address this meritless claim.

Courtright alleges this instruction amounts to an impermissible "constructive amendment" of the indictment in violation of the Fifth Amendment.

"Constructive amendment of the indictment can occur 'when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.'" *United States v. Jones,* 418 F.3d 726, 729 (7th Cir. 2005) (quoting *United States v. Cusimano,* 148 F.3d 824, 829 (7th Cir. 1998) (additional citation omitted)). Thus, the question becomes whether the jury instruction allowed a conviction based on charges not contained in the second superseding indictment. *Id.* at 730.

Notably, Courtright did not make a "constructive amendment" argument on the basis of the subject instruction on direct appeal. Thus, his claim is not properly before the Court. To the extent he argues ineffective assistance for failure to object to the instruction, his argument is meritless.

Counts 2 and 3 of the second superseding indictment charged Courtright with possession of child pornography in violation of 18 U.S.C. § 2252(b)(2) over the period from January 7, 2007 through August 9, 2007. Count 4 charges Courtright with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), alleging Courtright received images of child pornography on his computer on March 15, 2007. Counts 2, 3, and 4 state, "[t]he images included, but are not limited to" the files and file paths named herein. The counts also

name the make and model of the specific computers alleged to contain the files and file paths (Cr. Doc. 67). Thus, on the basis of the plain language of the indictment, the Court correctly instructed the jury that it could consider files and file paths not specifically named in the indictment that were found on the specifically named computers. Thus, Rosanswank was not ineffective for failing to object to the instruction.

**Claim 9: Cumulative Ineffectiveness**

Courtright generally alleges that Rosanswank's representation violated Courtright's Sixth Amendment rights to the extent that he was unable to "receive any semblance of a fair trial and rendered the entire adversarial process invalid." Courtright repeats many of his above complaints surrounding Rosanswank's representation. To that extent, the Court shall not address them again here. Further, many of the grievances stated in Courtight's ninth claim are too general to warrant meaningful review.

As to Courtright's specific complaints, he argues Rosanswank did not challenge the admission of Courtright's statements given on August 9, 2007, by presenting evidence of Courtright's medications and other drug and alcohol abuse. However, the record reveals that Rosanswank moved to suppress Courtright's statements of August 9, 2007, arguing said statements were given involuntarily in part because Courtright was "under the effects of powerful prescription narcotics at the time of the interview" (Cr. Doc. 53). Courtright did not challenge this Court's denial of the motion on appeal.

Courtright also alleges Rosanswank was ineffective because he was not licensed to practice law in Illinois. Rosanswank was licensed to practice law in Missouri and this Court appointed him as CJA counsel for Courtright.

Courtright's ninth claim does not warrant the relief he seeks.

**Claim 10: Ineffective Due to Inexperience**

Courtright's tenth claim states in the most general of terms that Rosanswank was too inexperienced "to try a federal case of this magnitude." Courtright alleges that Rosanswank admitted his inexperience to Courtright. Once again, Courtright merely re-alleges his various grievances with Rosanswank's representation. Specifically, he continues to argue that Rosanswank "in no way took an adversarial position against the testimony of the witnesses," showed "extreme incompetence," and failed "to allow crucial rebuttal witnesses to testify." The Court again reiterates, Courtright's generalized grievances, unsubstantiated by objective evidence and lacking in necessary detail, do not demonstrate constitutionally deficient representation, especially in light of the overwhelming evidence of Courtright's guilt.

**Claim 11: Failure to Move for Judgment of Acquittal on Bank Fraud Charge**

Courtright argues Rosanswank was ineffective for failing to move for a judgment of acquittal on the bank fraud charge or challenge the imposition of restitution. Courtright argues the government did not present evidence that Regions Bank suffered a loss.  As for bank fraud, 18 U.S.C § 1344 forbids anyone to "knowingly execute[ ], or attempt[ ] to execute, a scheme or artifice (1) to

defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." As the record reveals, the government presented evidence on all the necessary elements of bank fraud. Rosanswank was not ineffective for failing to move for a judgment of acquittal. Further, a challenge to Courtright's restitution component of sentence is not cognizable on collateral review. *See Barnickel v. United States,* 113 F.3d 704, 706 (7th Cir. 1997).

**Claim 12: Failure to Pursue Stated Defense**

Courtright again argues that Rosanswank failed to argue that "others who lived at Madison Ave [his parents' residence] were responsible for the crimes as charged." Again, the record reveals Rosanswank pursued this line of defense. The remainder of Courtright's claim raises issues addressed above. Namely, he complains that Rosanswank did not present witnesses in his defense. Again, in light of the overwhelming evidence of guilt, Courtright has not demonstrated how unidentified defense experts would have changed the outcome of his trial.[5]

**Claim 13: Appellate Counsel Morris was Ineffective for Failing to Challenge Seventh Circuit's Abuse of Discretion**

Courtright attempts to characterize his thirteenth claim as a claim of ineffective assistance of appellate counsel. In substance, he calls upon this Court

---

[5] It is noted that Courtright's reply attaches an alleged statement of a "Dr. Gerhard Witte, M.D." (Doc. 27-11). This alleged statement does not demonstrate that similar testimony at trial would have changed the outcome of Courtright's conviction. The Court further notes that its independent research of the subject reveals that Gerhard Witte is incarcerated in Wisconsin and has been for some time. *See* http://doc.wi.gov/community-resources/find-an-offender.

to review actions of the Seventh Circuit in deciding his case on direct appeal. To the extent Courtright does in fact allege ineffective assistance of his appellate counsel, Morris, Courtright has not demonstrated that Morris "ignored issues" that were "clearly stronger than those presented." *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1985). But more importantly, this Court does not have the authority to review the Seventh Circuit's decision affirming Courtright's conviction; the crux of Courtright's instant claim. Thus, this Court will not entertain his arguments concerning the Seventh Circuit's alleged "errors of law" any further.

**Claim 14: Failure to Move for Severance of the Charges**

Courtright argues Rosanswank was ineffective for failing to move for severance under FEDERAL RULE OF CRIMINAL PROCEDURE 14. The decision not to move for severance was clearly a tactical or strategic one, well within the "wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690. Further, the Court instructed the jury that "[e]ach count and the evidence relating to it should be considered separately, and a separate verdict should be returned as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to any other count" (Cr. Doc. 102-2, at p. 20). Courtright has not presented evidence or even an argument as to how the jury inferred guilt on the bank fraud charge based on evidence related to the child pornography charges. Rosanswank's failure to move for severance clearly does not amount to ineffective assistance of counsel.

**Claim 15: Inextricably Intertwined Doctrine**

Courtright argues evidence of his status as a registered sex offender was erroneously admitted at trial and that both Rosanswank and Morris were ineffective for not objecting and subsequently appealing its admission. Courtright relies on *United States v. Gorman,* which stated,

> There is now so much overlap between the theories of admissibility that the inextricable intertwinement doctrine often serves as the basis for admission even when it is unnecessary. Thus, although this fine distinction has traditionally existed, the inextricable intertwinement doctrine has since become overused, vague, and quite unhelpful. To ensure that there are no more doubts about the court's position on this issue—the inextricable intertwinement doctrine has outlived its usefulness. Henceforth, resort to inextricable intertwinement is unavailable when determining a theory of admissibility.

613 F.3d 711, 719 (7th Cir. 2010).

Rosanswank was of course not ineffective for failing to cite a case that had not yet been decided. As for Morris, he made a similar argument to the one Courtright now raises, as he challenged the Court's admission of Courtright's prior sexual assault conviction. The Seventh Circuit found that even assuming the prior bad act evidence was erroneously admitted, any error was harmless in light of the "overwhelming" evidence of Courtright's guilt. *Courtright,* 632 F.3d at 370. Court has not demonstrated that if Morris had argued his registered sex offender status was erroneously admitted, the result would have been different in light of the "overwhelming" evidence of Courtright's guilt. Courtright has not met his burden as to either prong of *Strickland* concerning either Rosanswank's or Morris' representation.

In sum, Courtright has not presented a claim that warrants the relief he seeks. His Section 2255 motion is denied.

**IV.    The Court Denies Courtright a Certificate of Appealability.**

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability has been granted. *See Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009).  For a court to issue a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right," meaning, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)); 28 U.S.C. § 2253(c)(2).

For the reasons stated above, Courtright's claims do not warrant a certificate of appealability, as reasonable jurists would not debate that the petition should not receive encouragement to proceed further. Therefore, the Court **DENIES** Courtright a certificate of appealability.

## V.   <u>Conclusion</u>

For the reasons set forth above, Courtright's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence is **DENIED** (Doc. 1).   Thus, Courtright's claims are **DISMISSED with prejudice**. The Clerk is instructed to close the file and enter judgment accordingly. Finally, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 30th day of October, 2013.

David R. Herndon
2013.10.30
10:14:28 -05'00'

**Chief Judge**
**United States District Court**